UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

REMO HARRISON DANIELS,

          Plaintiff,

v.                                     Case No. 17-cv-1080-pp

BRIAN FOSTER, *et al.*,

          Defendant.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS (DKT. NO. 44); GRANTING MOTION TO ADD A PARTY (DKT. NO. 27) AND MOTION TO SERVE ADDED PARTY (DKT. NO. 28); DENYING MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 14); DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 33); DENYING "MOTION TO ORDER" (DKT. NO. 30); DENYING MOTION FOR DAMAGES (DKT. NO. 36); DENYING WITHOUT PREJUDICE MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 38) AND DENYING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 52)**

---

The plaintiff is representing himself in this lawsuit. He is proceeding on various Eighth Amendment claims against the defendants for their part in the sexual harassment and assault the plaintiff experienced while at Waupun Correctional Institution. The defendants filed a motion to dismiss the claims against nineteen of the twenty defendants under Fed. R. Civ. P. 12(b)(6). Dkt. No. 44. The plaintiff has filed numerous motions of his own: a motion for a preliminary injunction and temporary restraining order, dkt. no. 14; a motion to add a party, dkt. no. 27, and a motion to serve that added party, dkt. no. 28; a motion to order the defendants to fix the legal computer, dkt. no. 30; another motion for a temporary restraining order, dkt. no. 33; a motion for damages,

1

dkt. no. 36; a motion to appoint counsel, dkt. no. 38; and a motion for default judgment, dkt. no. 52.

I.  **MOTION TO DISMISS CERTAIN CLAIMS (DKT. NO. 44)**

Instead of filing an answer to the complaint, the defendants filed a motion to dismiss nineteen of the twenty named defendants, arguing that the plaintiff did not state a claim against those nineteen defendants. Dkt. No. 44. The court agrees that the plaintiff's complaint does not state a claim against any defendants besides defendant C.O. Beahm, and will grant the defendants' motion.

A.  Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim for which the court may grant relief. See Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires a plaintiff to clear two hurdles. First, the complaint must describe the claim in sufficient detail to give a defendant fair notice of the claim and the grounds on which it rests. EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). Second, the allegations in the complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court." Id. at 776 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). When considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in

the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

B.      Relevant Facts

The defendants have not asked the court to dismiss the plaintiff's claims against C.O. Beahm. As background, however, the court observes that the plaintiff has alleged that Beahm sexually assaulted, abused and harassed him, and that Beahm engaged in a pattern of other harassing behavior (like hitting the plaintiff's door or messing with his food). Dkt. No. 1 at 2-7. The plaintiff's claims against the other defendants (mostly) stem from those allegations.

Regarding the remaining nineteen defendants, the plaintiff alleges that on December 13, 2016, he reported to C.O. Krause (whom he has asked to add as a defendant; the court will address that motion later) that Beahm touched the plaintiff's butt while he was in the shower. Dkt. No. 1 at 3. Krause laughed at the plaintiff and told him that "some inmates like that stuff." Id. The plaintiff alleges that in early January 2017, Lt. Larson and Lt. Immerfall came to investigate his claims of sexual assault, sexual abuse and sexual harassment. Id. at 5. The plaintiff did not receive a conduct report for lying; he interprets this to mean that Larson and Immerfall found him credible. Id. Beahm continued in his alleged pattern of hitting the plaintiff's door, and the plaintiff states that defendants Warden Brian Foster, Deputy Warden Sarah Cooper, Security Director Tony Meli, Captain Kyle Tritt and Unit Manager Paul Ludvigson did nothing. Id. He believes they did nothing because they did not care. Id.

3

On January 28, 2017[1], defendants Kyle Demers and Todd Olig were "doing meals." Id. Beahm asked them if they gave the plaintiff his first meal. Id. When both Demers and Olig asked why, Beahm said, "Because I did some to it." Id. Demers and Olig laughed. Id. Later, the plaintiff stopped Demers and asked if Beahm had done something to his meal, and Demers said no, because the plaintiff did not get the first meal (a statement with which the plaintiff appears to agree). Id.

By "this time" (late January, perhaps), defendants Torria M. Van Buren and Thomas Nelson had looked into the patters of sexual assault, sexual abuse and misconduct. Id. at 6. The plaintiff again alleges that the lack of a conduct report for lying indicates that Van Buren and Nelson found his allegations credible. Id. On February 11, 2017, the plaintiff wrote defendants Foster, Cooper, Meli, Tritt and Ludvigson to tell them that Beahm went into the plaintiff's cell and took legal documents pertaining to his Prison Rape Elimination Act ("PREA") case, as well as "mess[ing] up" his cell "to harass [him] for them claims of PREA." Id. Meli responded, telling the plaintiff (without investigating) that the plaintiff was lying. Id.

On February 18, 2018, Beahm and defendant Carlyn Voight were passing out meals. Id. Beahm did not give the plaintiff his fresh fruit. Id. When the plaintiff complained to Voight, she rolled her eyes. Id. The plaintiff then complained to defendant James Olson about the harassment while Olson

---

[1] The plaintiff doesn't say specifically that this happened on January 28, 2017, but he puts these allegations in the same section with his allegations about things he says Beahm did to him on the 28th. Dkt. No. 1 at 5.

4

completed observation check. Id. The plaintiff later got his fruit, and Voight said it was a mistake. Id.

The plaintiff states that he has reported all the sexual abuse to the Psychological Services Unit—specifically defendants Dr. Kristina deBlanc, Dr. Jemie Engstorm, Dr. Steven Schmidt and Dr. Nakisha Stewart. Id. at 7. The plaintiff alleges that these individuals "all report to security director Toni Meli." Id. He argues that none of these defendants did anything to get him out of harm's way. Id. He argues that if those defendants asked Meli to get him out of harm's way, then Meli had the authority to do so. Id.

Finally, the plaintiff reiterates that defendants Captain Larson, Lieutenant Larson, Immerfall, Lieutenant Burns, Nelson, Tritt, Ludvigson and Meli all "looked into this case," but never issued a conduct report to the plaintiff for lying. Id. He alleges that these defendants failed to intervene, and failed to protect him. Id.

    C.    The Court's Analysis

The plaintiff's primary allegation is that Beahm sexually harassed and assaulted him. This allegation is at the heart of his lawsuit, and the claims on which the court has allowed him to proceed concern Beahm's harassment and assault and the others defendants' alleged roles in dealing with—or not dealing with—what the plaintiff says happened to him.

For some of the nineteen other defendants, the plaintiff has made no allegations that they knew about his claims against Beahm. The plaintiff's only allegation against Olson is that Olson was there when Beahm refused to give

5

the plaintiff fresh fruit (and the plaintiff claims that Beahm gave the plaintiff the fruit ten minutes after the plaintiff complained to Olson). Id. at 6. As for defendants Demers, Olig and Voight, the plaintiff alleges only that Voight rolled her eyes when the plaintiff complained about not receiving fresh fruit from Beahm, id. at 6, and only that Olig and Demers laughed when the plaintiff suggested that Beahm did something to his food, id. at 5. As for defendants Foster and Cooper, the plaintiff mentions only that he told them about Beahm banging on his door and taking his legal documents. Id. at 5.

To state a claim that a prison official failed to protect an inmate from harm, a plaintiff must show that a serious risk of harm existed and that the official knew of the harm and intentionally disregarded it. Farmer v. Brennan, 511 U.S. 825, 828 (1994); Pope v. Shafer, 86 F.3d 90, 91-92 (7th Cir. 1996). Indeed, "the official must both be aware of the fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Pope, 86 F.3d at 91-92. The plaintiff has not alleged that he informed these defendants of Beahm's alleged sexual abuse or harassment, or that they otherwise knew of Beahm's alleged behavior. The court will dismiss defendants Olson, Damers, Olig, Voight, Foster and Cooper.

The court also will dismiss the psychological unit defendants—Dr. Van Buren, Dr. deBlanc, Dr. Engstorm, Dr. Schmidt and Dr. Stewart—because the plaintiff does not state a claim against them. He alleges that he told these defendants about the alleged abuse, and that, in turn, these defendants reported the plaintiff's claims to Meli, the security director. The fact that these

individuals reported the alleged abuse to Meli means that they did not intentionally disregard the threat. Farmer, 511 U.S. at 828. The complaint does not state a failure-to-protect claim against them.

The final group of defendants are the defendants who, according to the plaintiff, knew about and "looked into" the plaintiff's claims that Beahm sexually abused and harassed him: Captain Larson, Lieutenant Larson, Immerfall, Burns, Nelson, Tritt, Ludvigson and Meli. By his own account, the plaintiff concedes that these defendants engaged in some type of investigation into his allegations against Beahm. He does not allege that they failed, or refused, to investigate his claims. Rather, he alleges that despite their investigations, they did not remove him from harm's way.

The plaintiff's allegations do not show that these defendants acted with the required intentional, deliberate indifference that would support a failure-to-protect claim. Indeed, according to the plaintiff, these defendants *did* act: they investigated his complaints against Beahm. Prison officials are not obligated to believe inmates' claims. Riccardo v. Rausch, 375 F.3d 521, 528 (7th Cir. 2004). The plaintiff does not allege that these defendants concluded that he was at risk, but did nothing. He assumes that because some of these individuals could have issued him a conduct report for lying, but didn't do so, they must have believed him. This assumption is speculative; it is not enough to state a deliberate indifference claim against individuals who took his claims seriously enough to look into them.

The court will dismiss defendants Captain Larson, Lieutenant Larson, Immerfall, Burns, Nelson, Tritt, Ludvigson and Meli.

## II. MOTION TO ADD OFFICER KRAUSE (DKT. NO. 27) AND MOTION TO SERVE OFFICER KRAUSE (DKT. NO. 28)

The plaintiff filed a motion asking to add Office Krause as a defendant, dkt. no. 27, and a subsequent motion asking to serve her with the complaint, dkt. no. 28. The plaintiff says that he meant to include Krause in the complaint; leaving her out was an accident. Dkt. No. 27 at 1.

The defendants argue that the court should deny the motion because the plaintiff did not name Krause in his complaint (as he says he did), and did not file a proposed amended pleading as required by Civil L.R. 15 (E.D. Wis.). Dkt. No. 29 at 1. The court disagrees.

On page 2 of the complaint, the plaintiff listed the names of twenty defendants. Dkt. No. 1 at 2. Admittedly, he did not include Krause in that list. But on page 3 of the complaint, the plaintiff alleges that he told Krause that Beahm had touched his butt in the shower, and that she laughed at him and said that some inmates liked that kind of thing. Id. at 3. The plaintiff made allegations against Krause; he just neglected to mention her name in his defendant list. He asks only to add her name to the caption. To deny his request would elevate form over substance. The court will grant the plaintiff's request to add Krause's name to the caption of the complaint.

As noted, the plaintiff alleges that after he told Krause about an incident in which Beahm touched his butt when he got into and out of the shower, Officer Krause laughed at him, and told him that some inmates "like that

8

stuff." Id. To state a failure-to-protect claim, the prison official must know of the harm or potential harm and then intentionally disregard it. Farmer, 511 U.S. at 828. The plaintiff alleges just that against Krause; he told Krause what had happened and she responded by laughing and making a joke. This is enough to give Krause notice of the claim against her, EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007), and to state a plausible right to relief, id. (quoting Twombly, 550 U.S. at 555-56). The court will also grant the plaintiff's motion to serve Krause with the complaint.

### III. MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 14) AND MOTION FOR A TEMPORARY RESTRAINING ORDER (DKT. NO. 33)

The plaintiff filed a three-page motion entitled "Preliminary Injunctions and Temporary Restraining Order." Dkt. No. 14. He filed this identical motion in two other cases he has pending before this court, Daniels v. deBlanc, *et al.*, Case No.17-cv-681, and Daniels v. Foster, *et al.*, Case No.17-cv-680. In this single motion, he asks for injunctive relief of different kinds, against different defendants, under different circumstances.

The motion includes facts about the plaintiff's attempts to cut himself with a pen, facts about sexual abuse, harassment and retaliation (the facts that give rise to the allegations in this case), facts about his pain medication, facts about his behavior management plan, facts about people lying about him and facts about the jail house lawyers not responding to him because officers aren't sending out his mail. At the end of the motion, he asks the court to transfer him to the Wisconsin Resource Center ("to get the right mental

9

treatment and care") or to Green Bay Correctional Institution ("where he can get legal help and mental health by his old Dr who he got a good report with as his mental health status"). Dkt. No. 14 at 3.

The purpose of a preliminary injunction or temporary restraining order is "to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981); Crue v. Aiken, 137 F.Supp.2d 1076, 1082 (C.D. Ill. April 6, 2001). To obtain preliminary injunctive relief, whether through an injunction or a temporary restraining order, a plaintiff must show that (1) his underlying case has a reasonable likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If he shows those three things, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. Id.; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008).

With respect to preliminary injunctive relief regarding prison conditions, Congress has stated that such relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). The court must also give "substantial weight to any adverse

impact on public safety or the operation of a criminal justice system caused by the preliminary relief [.]" Id.

When he filed this motion, the plaintiff was at Waupun Correctional Institution. Dkt. No. 14 at 3. Since then, the Department of Corrections has moved him to Green Bay Correctional Institution, one of the places to which he'd asked the court to move him. Dkt. No. 54. This fact moots—makes unnecessary—his request for a preliminary injunction or temporary restraining order.

Even if the plaintiff remained at Waupun, however, the court would deny his motion. The plaintiff's motion did not meet the requirements for injunctive relief. Particularly, the plaintiff did not demonstrate that he would suffer irreparable harm if the court did not grant his motion. The plaintiff did not allege that any of the harm he complains about in his various cases—prison staff members failing to protect him from self-harm, prison staff members sexually abusing or harassing him (or failing to protect him from such abuse)—was on-going. He did not allege that the harm would continue if the court did not grant him motion. He also did not meet the requirement that he prove he had no adequate remedy at law. A "remedy at law" means money damages, and in each of the three cases, the plaintiff asked to be awarded money damages. These requests show that the plaintiff had an adequate remedy at law.

The plaintiff's request for the court to order the Department of Corrections to move him from one facility to another also is beyond the scope of what the court can order in a narrowly tailored preliminary injunction. See

Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) ("[T]he PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'") (quoting Hewitt v. Helms, 459 U.S. 460, 467 (1983)). It is up to prison officials—Department of Corrections officials—to decide where to place inmates; for a federal court to insert itself into the placement process would be "highly intrusive to the inner workings of the prison system and would tread upon the DOC's authority over running their institution." Capoeria v. Pollard, Case No. 16-CV-224, 2016 WL 1452398, at *4 (E.D. Wis. Apr. 13, 2016) (citing Baird v. Hodge, Case No. 13–cv–0376–MJR–SCW, 2013 WL 6493694, at *8–9 (S.D. Ill. Dec. 10, 2013)).

Because it is moot, and because the plaintiff has not met his burden, the court will deny his motion for injunctive relief. The court will deny the motion in all three cases, for the same reasons the court has stated above.

The court also denies the plaintiff's second motion for a temporary restraining order. Dkt. No. 33. In this second motion, the plaintiff alleges that Tritt and Beahm retaliated against him for this lawsuit by denying him certain amenities; that the Waupun Correctional Institution computer didn't work, preventing him from doing research; that he was assaulted by a non-defendant correctional officer; that a defendant gave him pills and told him to kill himself, and that no one took action; that Meli wrote him a false conduct report; and that someone took his eyeglasses in retaliation for this lawsuit. Dkt. No. 33 at

12

1-4. He again asks the court to move him to GBCI or the Wisconsin Resource Center. Id. at 4.

This motion, like the previous one, is moot, because the plaintiff now is at GBCI. It also raises new claims against new defendants, which is not a proper use of a motion for a temporary restraining order. The court denies the motion.

## IV. "MOTION TO ORDER" (DKT. NO. 30)

The plaintiff filed a "motion to order," informing the court that the computer in the segregation unit at Waupun Correctional Institution was broken. Dkt. No. 30 at 1. He asked the court to order the defendants to fix the computer, so that he could "go into discovery any day now please." Id. at 2.

Because the plaintiff is no longer at Waupun, this motion is moot. The court also notes that the plaintiff does not necessarily need a computer to conduct discovery. Discovery involves asking the other side for documents and information about the case, and providing the other side with documents and information that the plaintiff has. It does not involve research about cases or law. The court will deny this motion.

## V. MOTION FOR DAMAGES (DKT. NO. 36)

The plaintiff has filed a document he titled "Motion for Damages." Dkt. No. 36. He explained that he was experiencing what he believed to be harassment, based on his decision to report staff misconduct. Specifically, he alleged that someone named C.O. King (who is not a defendant in this case) gave him pills while he was on observation status, and told him to kill himself,

13

then walked off and left his medication trap open. Id. at 1. He says he told the warden and the security director about this, and that they didn't believe him, or didn't act. Id. at 1-2. The plaintiff construes this as the defendants retaliating against him for filing this lawsuit, and he asks the court to grant his motion for damages to "stop or deter future misconduct in this case." Id. at 3.

The plaintiff's complaint already requests damages against the warden and the security director. It appears that the plaintiff's motion for damages is an attempt to add a new defendant—C.O. King—to his case, and to add new allegations against King, the warden and the security director. This is not the appropriate way to add a defendant, or to add claims, to a lawsuit. If the plaintiff believes that King has violated his constitutional rights since the time he fled the complaint in this case, he must file a new lawsuit against King. He cannot add new, unrelated claims to this lawsuit, and the only way he can obtain damages in this lawsuit is if he wins the lawsuit itself.

The court denies the plaintiff's motion for damages.

## VI. MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 38)

The plaintiff has asked the court to appoint a lawyer to represent him. Dkt. No. 38. In a civil case, the court has the discretion to recruit counsel for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, in this district, a plaintiff must contact at least three lawyers to find

a lawyer without the court's help. He then must provide the court with the names of the lawyers he contacted, and the dates on which he contacted them, along with copies of any letters they sent to the plaintiff in response to his request for representation.

After the plaintiff demonstrates that he has made those efforts, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff states that he contacted several attorneys. The court agrees that he made the reasonable effort to find an attorney on his own, as Pruitt requires him to do. The court will not grant the plaintiff's motion right now, however, because the court believes he can participate in discovery and respond to a dispositive motion. The court understands that the plaintiff does not have the money to hire a lawyer, has no legal training, is in segregation and struggles with mental illness. Unfortunately, this is true for many prisoners. Despite these facts, the court has been able to understand the documents the

plaintiff has filed; he has been clear in stating what he wants, and why. The court finds the plaintiff can handle the initial stages of the case on his own.

After all the defendants have filed an answer to the plaintiff's complaint, the court will enter a scheduling order[2], setting deadlines for discovery and the filing of dispositive motions. At that point, the plaintiff may ask the defendants to answer his interrogatories (written questions) and produce any reports, records, or documents that he thinks he needs to prove his claims. Fed. R. Civ. P. 33, 34. If circumstances change or the plaintiff encounters obstacles that he does not believe he can handle on his own, he may renew his motion and the court will consider it at that time.

## VII. MOTION FOR DEFAULT JUDGMENT

Finally, the plaintiff has asked the court to enter default judgment against the defendants. Dkt. No. 52. He claims that the defendants failed to file an answer.

The plaintiff is correct that nineteen of the defendants did not file answer; instead, they filed a motion to dismiss. Federal Rule of Civil Procedure 12(a) requires a party who is sued to file a "responsive pleading." An answer is one kind of responsive pleading. Another kind, however, is a motion to dismiss. The nineteen defendants filed a motion to dismiss. They filed it within the time allowed by the rules.

---

[2] The plaintiff recently asked the court to issue a scheduling order. Dkt. No. 55. The court does not issue scheduling orders until every defendant has been served, and has responded to the complaint.

The twentieth defendant, defendant Beahm, timely filed an answer. Dkt. No. 46.

The court will deny this motion.

## VIII. CONCLUSION

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 44. The court dismisses defendants Brian Foster, Sarah Cooper, Tony Meli (sued as Tony Meil), Kyle Tritt, Paul Ludvigson, Jeremiah Larsen, Andrew Larson, Matthew Burns, Keith Immerfall, James Olson, Thomas Nelson, Carlyn Voight, Todd Olig, Kyle Demers, Torria M. Van Buren, Jemie Engstorm, Kristine de Blanc, Steven Schmidt and Nakisha Stewart.

The court **GRANTS** the plaintiff's motion to add Officer Krause as a defendant. Dkt. No.27.

The court **GRANTS** the plaintiff's motion to have new defendant Officer Krause served. Dkt. No. 28. The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, the clerk of court will send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on Officer Krause.

The court **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendant Officer Krause shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **DENIES** the plaintiff's motion for a preliminary injunction and temporary restraining order. Dkt. No. 14.

17

The court **DENIES** the plaintiff's motion for a temporary restraining order. Dkt. No. 33.

The court **DENIES** the plaintiff's motion to order. Dkt. No. 30.

The court **DENIES** the plaintiff's motion for damages. Dkt. No. 36.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 38.

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 52.

Dated in Milwaukee, Wisconsin this 21st day of August, 2018.

                                **BY THE COURT:**

                                _____

                                **HON. PAMELA PEPPER**
                                **United States District Judge**