UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

REMO HARRISON DANIELS,

          Plaintiff,

v.                                      Case No. 17-cv-1080-pp

BRIAN FOSTER, *et al.*,

          Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS (DKT. NO. 67), DENYING WITHOUT PREJUDICE MOTION TO APPOINT COUNSEL (DKT. NO. 73), DENYING MOTION FOR ORDER ALLOWING REVIEW OF VIDEO FOOTAGE (DKT. 77), GRANTING MOTION FOR EXTENSION OF TIME TO CONDUCT DISCOVERY (DKT. NO. 80) AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 83)**

        The plaintiff, Remo Harrison Daniels, is representing himself. He has filed a series of motions relating to discovery, along with a motion to appoint counsel. The court will deny all but one of his motions relating to discovery and will deny without prejudice his motion to appoint counsel. The court will grant the plaintiff additional time to conduct discovery and will deny as moot the defendants' motion for summary judgment, which they may re-file once discovery is closed.

**I.     MOTION TO COMPEL AND FOR SANCTIONS (DKT. NO. 67)**

        In the brief supporting his motion to compel, the plaintiff asserts that he served the defendants with two requests for production of documents—one on October 16, 2018 and another on December 10, 2018. Dkt. No. 68 at 1. He asserts that the defendants responded by saying that they did not have the

video footage he was requesting. Id. He says that he tried to work things out with defense counsel but has been unable to do so. Id. at ¶10. He attached the defendants' response to his request for the December 13, 2016 footage; they replied that they had no videos for that date. Dkt. No. 69-2 at ¶1 (response). His brief also mentions "document relevant to past mistreatment of inmates by defendant's Beahm and Krause." Dkt. No. 68 at 2–3.

A. Video Footage

According to the plaintiff, the defendants failed to produce video footage from the December 13, 2016 incident involved in this case, and provided "cut" footage of the incident recorded on January 3, 2017. Dkt. No. 69 at ¶¶ 2, 8. This is not the first time the plaintiff has asked the court to order the defendants to turn over such footage—he made a similar request on December 28, 2018. Dkt. No. 62. The court denied the first request, in part because he failed to confer with counsel for the defendants before filing the motion, as required Civil Local Rule 37, and in part because he failed to offer anything beyond speculation that he was given the wrong video footage. Dkt. No. 66 at 4–5. The court told the plaintiff that if he had proof that the defendants had not given him relevant evidence or had tampered with the evidence they did give him, he could write to the defendants' attorney, Samuel Berg, and ask for an explanation. Id. According to Attorney Berg, the plaintiff has not done this. Dkt. No. 72 at 2.

The court acknowledges that in this second motion, the plaintiff has remedied one of the problems with his last motion—he certified that he had

tried to confer with defense counsel to work out the dispute before he filed this motion. But the plaintiff has not remedied the other problem—he has not provided the court with *proof* that a video exists that has not been turned over, or that the defendants tampered with the one they did turn over. The plaintiff continues to insist that there is video footage from December 13, 2016 and January 3, 2017 that would show the defendants sexually assaulting him. He argues that because he knows for a fact that such video exists, the fact that the defendants have not provided it to him shows that they are withholding evidence or tampering with evidence. Dkt. No. 69 at ¶8. Attorney Berg has (again) certified that video from December 13, 2016 does not exist and that the footage from January 3, 2017 has not been tampered with. Dkt. No. 72 at 2–4.

The court will deny the motion.

### B. Investigations against Beahm and Krause

The plaintiff argues that he is entitled to evidence he requested about defendants Beahm and Krause. Dkt. No. 68 at 2–3. The relevant request appears to be his request number four for production of documents, in which he asks for "[a]ll records, or Documents of Investigates claims against both Defendants." Dkt. No. 69-1 at 2. The defendants objected to this request as overly broad, unduly burdensome, and not proportional to the needs of the case. Id. at 3. Attorney Berg stated that if the plaintiff submitted a more specific request, he would review it and respond accordingly. Id. at 3. The plaintiff failed to do so, and the court could deny his motion solely for failure to meet and confer as required under Civil L.R. 37.

But the court will deny the plaintiff's motion on the merits. The court agrees that the plaintiff's request was very broad, and Attorney Berg outlined the results of those investigations in his response, despite his objection. Dkt. No. 72 at 3–4. Counsel indicated that there were no PREA investigations or disciplinary actions as to defendant Krause. Id. at 5. He indicated that Beahm had been the subject of thirteen investigations and that all thirteen were unfounded or unsubstantiated. Id. at 5. Counsel also indicated that Beahm had been subject to two disciplinary actions, neither of which were related to the plaintiff's claims, or to issues like the plaintiff's. Id. at 6.

In an abundance of caution, the defendants submitted documents relating to investigations into Beahm for *in camera* review. The court has reviewed the documents. The two disciplinary actions against Beahm took place in 2011 and 2015, respectively, long before the incident that forms the basis of this lawsuit. Neither had to do with this plaintiff; neither had to do with sexual harassment. Of the thirteen PREA complaints against Beahm (one of which was the plaintiff's, for the incident in this case), all were investigated (several quite extensively). Investigators determined that they either were unsubstantiated (not enough evidence to draw a conclusion) or unfounded (did not happen). In one instance, the inmate who allegedly made the complaint against Beahm denied he ever called the PREA hotline, and speculated that another inmate did it under his name.

None of the other inmates alleged that Beahm touched their buttocks, as the plaintiff has alleged. Even if they had, the fact that the investigators found

4

the claims unfounded would prevent the plaintiff from presenting the complaints at his trial, or as evidence at summary judgment. Federal Rule of Evidence 404(b)(1) prohibits a party from admitting evidence of other crimes, wrongs or acts to show that someone acted in accordance with their character. There are exceptions; for example, Rule 414(b)(2) says that evidence of other "bad acts" may be admissible to show intent, absence of mistake or lack of accident. But for the court to admit "other bad acts" evidence for such purposes, the party seeking to admit the evidence must show that there is "sufficient amount of evidence for the fact finder to conclude that the similar act was committed." Okai v. Verfuth, 275 F.3d 606, 610–11 (7th Cir. 2001). Because none of the PREA complaints against Beahm have been proven, the plaintiff could not have them admitted as evidence at summary judgment or at trial. The court will not require the defendants to turn over to the plaintiff the disciplinary actions or PREA complaints against Beahm.

    C.    Request for Sanctions

The plaintiff stated in his motion that he was seeking "an order compelling and sanction and for the Defendants to produces for Inspection and copying the Documents Requested on October 26, 18." Dkt. No. 67. The court has no reason to sanction the defendants; they have not done anything wrong. The court will deny the motion in its entirey.

**II.    MOTION FOR ORDER FOR ALLOWING REVIEW OF VIDEO FOOTAGE (DKT. NO. 77)**

The plaintiff filed a motion stating that the institution would not let him review video footage for his case. Dkt. No. 77. He says that he had the

5

opportunity to review the footage once, but only for thirty minutes. Id. at ¶6. He asks the court to order the institution to allow him to review the footage. Id. at page 1. This is a problem the plaintiff has experienced before. See Dkt. No. 66.

The defendants responded to the motion ten days later, stating that three days earlier, the plaintiff had a video viewing session at the prison. Dkt. No. 82 at 1. Counsel stated that the plaintiff also had the opportunity to get any of the property he'd had in storage while he was at the Restricted Housing Unit. Id. Finally, counsel reported that the plaintiff now was back in general population and had access to all his property, including his legal property. Id. at 1-2.

The plaintiff did not file a reply or notify the court that the problem had not been resolved. The court will deny the motion as moot.

## III. MOTION FOR EXTENSION OF TIME (DKT. NO. 80)

The plaintiff also filed a motion asking for more time to conduct discovery. Dkt. No. 80. He explained that he needed more time, based on the defendants' misunderstanding of his discovery requests. Id. Later, in his motion to stay the defendants' motion for summary judgment, he explained that he needed more time after being released from segregation. Dkt. No. 93 at 1. He indicated that he was looking for eyewitnesses and a jailhouse lawyer. He also said that he had experienced issues with self-harm and needed to go to the emergency room. Id. at 2. The court will grant the plaintiff's motion for more time to conduct discovery. The court will extend the deadline for the parties to complete discovery to the end of the day on **October 18, 2019**.

Because the court is reopening discovery, it will deny as premature the defendants' motion for summary judgment. Dkt. No. 83. The court will extend the deadline for filing dispositive motions to **November 22, 2019**. The defendants may re-file the motion they've already filed if they conclude that they don't need to make any changes after the additional discovery period.

**IV.　MOTION TO APPOINT COUNSEL (DKT. NO. 73)**

The plaintiff has filed four prior motions or letters asking the court to appoint counsel to represent him. See Dkt. Nos. 4, 17, 31, 38. The court denied the previous motions, although it found in its order denying the first one that the plaintiff had demonstrated that he'd made reasonable efforts to find counsel on his own. Dkt. No. 23 at 9. The court denied the motions because, in each instance, it found that the plaintiff had demonstrated that he was capable of presenting his case on his own. See Dkt. No. 23 at 9; Dkt. No. 56 at 15-16.

In this most recent motion, the plaintiff says that he can't afford a lawyer, that the issues in his case are complex, that he has extremely limited access to the law library, that the defendants are hiding video footage or destroying evidence and that the plaintiff has limited legal knowledge. Dkt. No. 73.

As the court has stated in its previous orders denying the plaintiff's motions to appoint counsel, in a civil case, the court has the discretion to recruit counsel for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the plaintiff must make

7

reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff demonstrates that he has made those efforts, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The court already has held that the plaintiff has satisfied the first prong of Pruitt, by making a reasonable effort to find counsel on his own. But the court is still of the view that the plaintiff can handle the case himself at this stage. First, the plaintiff says that he can't afford a lawyer. The court has no reason to disbelieve the plaintiff. But most incarcerated plaintiffs can't afford lawyers. Congress has not given the courts funds to hire lawyers for incarcerated plaintiffs in civil cases. The courts must rely on volunteer lawyers, and there aren't many of those. For that reason, the court looks carefully at the details of each case in which an incarcerated plaintiff asks for counsel, to determine whether at that particular stage of the case, it appears to the court

8

that the plaintiff really cannot state his own case. Here, the plaintiff has been litigating his case himself for two years. He has filed numerous motions, letters and other documents. He has conducted discovery, and clearly stated to the defense what it is that he wants. The court cannot conclude that the plaintiff is one of those incarcerated plaintiffs who can't move forward without a lawyer,

The plaintiff also says that the issues in his case are complex. The plaintiff is proceeding against two defendants, Beahm and Krause. He alleges that Beahm sexually assaulted him and Krause failed to protect him, both in violation of his Eighth Amendment rights. His claims rely mostly on his own recollection and his ability to tell his side of the story. He now has discovery materials that he can use to support his claims. All that is left for the plaintiff to do is complete his discovery, and then respond to the summary judgment motion the defendants file. The court is aware that the plaintiff struggles with mental illness, but the court has had no difficulty following the plaintiff's pleadings. It had no reason to think he cannot respond to the summary judgment motion in the same way he has responded to other filings in the case.

The plaintiff says he has very limited access to the law library. Most incarcerated plaintiffs do. This limited access, however, has not prevented the plaintiff from citing rules, cases and other legal authority in his pleadings. In addition, now that the plaintiff is in general population rather than at the RHU, he likely will have a bit more time in the library than he did when he filed his motion.

The plaintiff asserts that the defendants are hiding and tampering with evidence, which is why he needs a lawyer. The court already has addressed—and rejected—this claim.

Finally, the plaintiff says that he is not very knowledgeable about the law. The court understands that the plaintiff is not a lawyer and isn't trained in the law. The court is aware from the many cases it sees from incarcerated plaintiffs that many of them struggle with this handicap. But despite that lack of knowledge, the plaintiff has represented himself ably up to now. As the court noted above, he has cited rules and cases. When he has made procedural errors (as he did the first time he filed a motion to compel), he has learned from the court's response, and has corrected those errors going forward. He explains himself well and the court can follow his train of thought, despite his stated mental health struggles. The court is also giving him more time to conduct discovery and he can ask for an extension if he needs one.

The plaintiff can complete the discovery and respond to the defendants' motion for summary judgment on his own. If any of his claims survive summary judgment, the court will recruit counsel to help him with the next step in the litigation.

## V. CONCLUSION

The court **DENIES** the plaintiff's motion to compel and for sanctions. Dkt. No. 67.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 73.

The court **DENIES AS MOOT** the plaintiff's motion for an order allowing review of video footage. Dkt. No. 77.

The court **GRANTS** the plaintiff's motion for an extension of time to conduct discovery. Dkt. No. 80. The court **ORDERS** that the deadline for completing discovery is **EXTENDED** to the end of the day on **October 18, 2019** and that the deadline for filing dispositive motions is **EXTENDED** to the end of the day on **November 22, 2019.**

The court **DENIES WITHOUT PREJUDICE** the defendants' motion for summary judgment. Dkt. No. 83.

Dated in Milwaukee, Wisconsin, this 16th day of September, 2019.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**